# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Food Market Merchandising, Inc.,            Civil No. 15-3347 (DWF/HB)

         Plaintiff,

v.                                                        **MEMORANDUM**
                                                    **OPINION AND ORDER**

West Bend Mutual Insurance Company,

         Defendant.

_____

Alexander M. Jadin, Esq., and Finn S. Jacobsen, Esq., Roeder Smith Jadin PLLC, counsel for Plaintiff.

Daniel J. Cunningham, Esq., Tressler LLP; Mark D. Covin, Esq. and Jeffrey R. Mulder, Esq., Bassford Remele, PA, counsel for Defendant.

_____

## INTRODUCTION

      This lawsuit is an insurance coverage dispute between Plaintiff Food Market Merchandising, Inc. ("FMMI") and Defendant West Bend Mutual Insurance Company ("West Bend"). FMMI had insurance policies with West Bend that covered liability for "personal and advertising injury." After FMMI filed a lawsuit related to the ownership and use of the "got milk?" service marks and trademarks, the defendant in that lawsuit filed counterclaims against FMMI. FMMI tendered the defense and indemnification of the counterclaims to West Bend, but West Bend disclaimed coverage.

      Now, the matter is before the Court on the parties' cross motions for summary judgment (Doc. Nos. 16, 21). After carefully examining the insurance policies, as well as

the counterclaims in the underlying lawsuit, the Court concludes that West Bend has no duty to defend or indemnify FMMI. Accordingly, the Court grants West Bend's motion for summary judgment and denies FMMI's motion for summary judgment.

## BACKGROUND

### I.   The Underlying Lawsuit

In 2011, FMMI entered into a license agreement (the "License Agreement") with the California Milk Processor Board ("CMPB"), the entity that created the well-known "got milk?" advertising campaign. (Doc. No. 15, Ex. F ("CMPB's Second Am. Counterclaims") ¶¶ 45, 68.)[1] Under the License Agreement, FMMI had a license to create, sell, and distribute flavored drinking straws (and other products) bearing the "got milk?" marks. (*Id.* ¶ 68.) In 2014, after FMMI advised CMPB of its supposedly impending bankruptcy, CMPB and FMMI entered into another agreement (the "First Amendment to the License Agreement"), in which the parties agreed to terminate the License Agreement. (*Id.* ¶ 82.) FMMI agreed that it no longer had the right to sell any products bearing the "got milk?" marks, and CMPB agreed to provide a discount on a royalty payment owed by FMMI. (*Id.* ¶¶ 81-82.) Shortly thereafter, CMPB and Diversified Consumer Goods, LLC ("DCG"), entered into a license agreement (the "DCG License Agreement") that granted DCG a license to use the "got milk?" marks in

---

[1]    Although FMMI's Complaint in this case refers to CMPB's First Amended Counterclaims, the Court relies on CMPB's Second Amended Counterclaims, which supersede the First Amended Counterclaims.

2

connection with flavored drinking straws. (*Id.* ¶ 84.) In early 2015, CMPB discovered that FMMI was continuing to use the "got milk?" marks without permission. (*Id.* ¶ 87.)

On March 10, 2015, shortly after CMPB demanded that FMMI cease using the "got milk?" marks, FMMI filed a federal lawsuit against CMPB. (*Id.* ¶ 90.) The lawsuit, which is currently pending in the Eastern District of California, seeks a declaration that FMMI—not CMPB—is the rightful owner of the "got milk?" marks. (*See id.* ¶¶ 90-91.)[2] CMPB filed counterclaims against FMMI, as well as four entities and two individuals that CMPB alleges are alter egos of FMMI: Magic Straws, LLC; Reach Companies, LLC; DCG; Diversified Flavor, LLC; Jon Tollefson; and Paul Henson. (*Id.* ¶¶ 1-221.) CMPB's fourteen counterclaims include: trademark and service mark infringement (Counts 1, 2, and 3); unfair competition by infringement of common-law rights (Count 4); false designation of origin (Count 5); trademark and service mark dilution (Count 6); counterfeiting (Count 7); contributory trademark and service mark infringement (Count 8); fraud (Count 9); breach of contract (Counts 10, 11, 12, and 14); and rescission based on fraudulent inducement (Count 13). (*Id.* ¶¶ 120-221.)

Put simply, CMPB's counterclaims center on three general allegations: (1) FMMI used the "got milk?" marks in violation of CMPB's contractual, statutory, and common law rights (Counts 1 through 8 (the "Infringement Counterclaims")); (2) FMMI fraudulently induced CMPB to agree to a reduced royalty payment by FMMI (Counts 9

---

[2] The underlying action is: *Food Market Merchandising, Inc. v. California Milk Processor Board*, 2:15-cv-01083-TLN-CKD (E.D. Cal.).

and 13 (the "Fraud Counterclaims")); and (3) FMMI breached its contractual agreements with CMPB (Counts 10, 11, 12, and 14 (the "Contract Counterclaims")).  (*See id.*)

## II.     The Insurance Policies

West Bend issued two consecutive and materially identical Commercial General Liability Policies (the "Primary Policies"), as well as two consecutive and materially identical Commercial Umbrella Liability Policies (the "Umbrella Policies") (collectively, the "Policies"), to FMMI.  (Doc. No. 15, Exs. A-D.)  Both the Primary Policies and the Umbrella Policies include coverage for "personal and advertising injury."  The Primary Policies provide initial coverage:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

(Doc. No. 15, Ex. A ("Primary Policy I") at 25; Doc. No. 15, Ex. B ("Primary Policy II") at 22.)  The Umbrella Policies provide coverage beyond the limits of the Primary Policies:

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted.

(Doc. No. 15, Ex. C ("Umbrella Policy I") at 29; Doc. No. 15, Ex. D ("Umbrella Policy II") at 19.)

4

The Policies define "personal and advertising injury" as injury "arising out of" one of several listed offenses, including "[t]he use of another's advertising idea in your 'advertisement.'" (Primary Policy I at 33; Primary Policy II at 30; Umbrella Policy I at 38; Umbrella Policy II at 28.) They define "advertisement" as "a notice"—including material placed on the Internet—"that is broadcast or published . . . about your goods, products or services for the purpose of attracting customers or supporters." (Primary Policy I at 31; Primary Policy II at 28; Umbrella Policy I at 37; Umbrella Policy II at 27.)

The Policies then cut back on their initially broad grants of coverage. They exclude coverage under two provisions that are relevant here, the knowing-violation exclusion and the breach-of-contract exclusion:

> This insurance does not apply to:
>
> **a.     Knowing Violation Of Rights Of Another**
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal advertising injury".
>                                            ***
> **f.     Breach Of Contract**
> "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

(Primary Policy I at 25; Primary Policy II at 22; *see also* Umbrella Policy I at 29; Umbrella Policy II at 19.) FMMI and West Bend agree that both the Primary Policies and the Umbrella Policies were in effect in 2014 and 2015, when the events underlying CMPB's counterclaims allegedly occurred.

5

### III. This Lawsuit

FMMI and West Bend dispute whether the Policies require West Bend to defend and indemnify FMMI with respect to CMPB's counterclaims in the underlying lawsuit. After FMMI tendered the defense and indemnification of the counterclaims to West Bend, West Bend disclaimed coverage. (Doc. No. 15, Ex. G.) Thereafter, FMMI filed this lawsuit against West Bend, asserting three claims: West Bend breached its insurance contracts with FMMI by disclaiming coverage (Count 1); West Bend breached its implied covenant of good faith and fair dealing by disclaiming coverage (Count 2); and FMMI is entitled to a declaration that West Bend must defend and indemnify FMMI (Count 3). (Doc. No. 1, Ex. A.) Now the Court considers the parties' cross motions for summary judgment. (Doc. Nos. 16, 21.)[3]

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*,

---

[3] Both parties characterize their motions as motions for summary judgment, implying that they are seeking judgment on all claims. FMMI's motion, however, seeks declaratory relief only, and the briefs in support of the motion focus almost exclusively on West Bend's duty to defend FMMI. (Doc. Nos. 21, 23.) Accordingly, the Court interprets West Bend's motion as one for partial summary judgment. *See Bergen v. Grinnell Mut. Reins. Co.*, 946 F. Supp. 2d 867, 869 n.3 (D. Minn. 2013).

574 F.3d 885, 892 (8th Cir. 2009).  However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

**II.    General Principles**

This case requires the Court to interpret the Policies that West Bend issued to FMMI.  "[A]n insurance contract is subject to general principles of contract law," and "[c]overage issues and the construction and interpretation of a policy are questions of law."  *Murray v. Greenwich Ins. Co.*, 533 F.3d 644, 648 (8th Cir. 2008).  "Minnesota law construes an insurance policy's words of inclusion broadly and words of exclusion narrowly."  *Sletten & Brettin Orthodontics, LLC v. Cont'l Cas. Co.*, 782 F.3d 931, 935 (8th Cir. 2015).  As such, "[d]oubts as to coverage must be resolved against the insurer issuing the policy in favor of coverage, and the burden rests with the insurer to prove the claim is not covered."  *Murray*, 533 F.3d at 648.

After interpreting the Policies' provisions, the Court must determine what duties, if any, the Policies impose on West Bend. Under Minnesota law, insurers may have two duties: (1) a duty to defend; and (2) a duty to indemnify. *Selective Ins. Co. of Am. v. Smart Candle, LLC*, 781 F.3d 983, 985 (8th Cir. 2015). The duty to defend obligates an insurer to defend against claims brought against its insured, and it "extends to every claim that 'arguably' falls within the scope of coverage." *AMCO Ins. Co. v. Inspired Techs., Inc.*, 648 F.3d 875, 880 (8th Cir. 2011) (quoting *Gen. Cas. Co. of Wisc. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 576 (Minn. 2009)). "[T]he duty to defend one claim creates a duty to defend all claims." *Id.* (quoting *Wozniak*, 762 N.W.2d at 576). The duty to indemnify, which is narrower than the duty to defend, requires an insurer to pay damages that the insured is legally obligated to pay for covered claims, and it "arises only if the insured ultimately proves up facts showing coverage." *Nelson v. Am. Home Assurance Co.*, 824 F. Supp. 2d 909, 915 (D. Minn. 2011).

### III.  Duty to Defend

To begin, the Court determines whether West Bend has a duty to defend FMMI under the Policies. The Court considers the Policies' initial grant of coverage for "personal and advertising injury" before turning to the breach-of-contract exclusion and the knowing-violation exclusion. In so doing, the Court compares the Policies' relevant

8

provisions with CMPB's allegations[4] in the underlying lawsuit. *Sletten*, 782 F.3d at 934-35.

### A. Initial Coverage for "Personal and Advertising Injury"

All fourteen counterclaims alleged by CMPB fall within the Policies' initial grant of coverage for "personal and advertising injury." The Policies provide that "personal and advertising injury" includes injury "arising out of . . . [t]he use of another's advertising idea in your 'advertisement.'" The Policies' definition of "advertisement" covers published notices about the insured's products, including material on the Internet, "for the purpose of attracting customers." Under Minnesota insurance law, "arising out of" means "originating from," "growing out of," "flowing from," or "causally connected with." *Bethel v. Darwin Select Ins. Co.*, 735 F.3d 1035, 1039 (8th Cir. 2013) (citations omitted); *see also Murray*, 533 F.3d at 650; *Callas Enters., Inc. v. Travelers Indem. Co.*

---

[4] Whether a court should focus on the legal claims asserted—or the factual allegations supporting such claims—depends on the policy provisions and claims at issue in a particular case. If a legal claim, by its elements, fits within the policy's scope of coverage, the insurer has a duty to defend. *Ross v. Briggs & Morgan*, 540 N.W.2d 843, 847-48 (Minn. 1995). Likewise, if factual allegations could give rise to a covered claim—even if the actual claim asserted does not fit neatly into the policy's coverage provision—the insurer has a duty to defend. *Comsat Corp. v. St. Paul Mercury Ins. Co.*, Civ. No. 97-2236, 1998 WL 34088218, at *3-5 (D. Minn. Mar. 6, 1998). That said, factual allegations should only trigger a duty to defend when such allegations could give rise to a covered claim that could "arguably be based on more than one legal theory." *Miller v. ACE USA*, 261 F. Supp. 2d 1130, 1134 (D. Minn. 2003).
    If a legal claim, by its elements, fits within an exclusion, the exclusion applies, even if some of the factual allegations supporting the claim do not fall within the exclusion. *Meadowbrook, Inc. v. Tower Ins. Co., Inc.*, 559 N.W.2d 411, 420 (Minn. 1997). Still, if a legal claim could *but does not necessarily* fit within an exclusion, the application of the exclusion turns on the factual allegations underlying the claim. *Sletten*, 782 F.3d at 938-39; *AMCO*, 648 F.3d at 882-83.

*of Am.*, 193 F.3d 952, 955-56 (8th Cir. 1999).  Indeed, it is well-established that "but for" causation is enough to satisfy the "arising out of" provision of an insurance policy. *Bethel*, 735 F.3d at 1039; *Murray*, 533 F.3d at 650.

CMPB's counterclaims plainly allege that FMMI engaged in the "use of another's advertising idea in your 'advertisement.'"  The counterclaims assert that FMMI used CMPB's "got milk?" marks, which CMPB used in its advertising campaigns, to market FMMI's products.  (CMPB's Second Am. Counterclaims ¶¶ 45-61, 87, 93-100, 121, 126, 130.)  Specifically, CMPB alleges that FMMI placed the "got milk?" marks on product packaging, display cases, and Internet websites to attract customers.  (*Id.* ¶¶ 93-100, 121, 126, 130.)

Moreover, the Infringement Counterclaims, Fraud Counterclaims, and Contract Counterclaims "aris[e] out of" FMMI's use of the "got milk?" marks.  Each of CMPB's Infringement Counterclaims has the requisite causal relationship:  but for FMMI's use of the "got milk?" marks, CMPB would not have been injured by infringement of its rights in the marks.  Likewise (if less obviously), each of CMPB's Fraud Counterclaims and Contract Counterclaims has the necessary causal relationship with FMMI's use of the "got milk?" marks.  Each of the Fraud Counterclaims alleges that FMMI fraudulently induced CMPB to agree to a reduced royalty payment for FMMI's use of the "got milk?" marks.  (*Id.* ¶¶ 81, 166, 196.)[5]  And, each of the Contract Counterclaims alleges that

---

[5] West Bend incorrectly argues that Count 13, for rescission based on fraudulent inducement, does not fall within the initial coverage provision because it does not claim
(Footnote Continued on Next Page)

FMMI breached a contract that either granted or terminated rights to use the "got milk?" marks. (*Id.* ¶¶ 68, 82, 84, 179, 187, 192, 220.)

Because all of CMPB's counterclaims "originate" and "flow from" FMMI's use of the "got milk?" marks in its advertisements, all fourteen counterclaims fall within the Policies' initial grant of coverage for "personal and advertising injury." *See Bethel*, 735 F.3d at 1039.

### B. The Breach-of-Contract Exclusion

The breach-of-contract exclusion, however, removes the Infringement Counterclaims and the Contract Counterclaims from coverage. The breach-of-contract exclusion states that "'[p]ersonal and advertising injury' arising out of a breach of contract" is not covered by the Policies. As noted in the previous section, courts applying Minnesota law give a broad construction to the phrase "arising out of." This is true even when "arising out of" appears in an insurance exclusion. *Bethel*, 735 F.3d at 1039; *Murray*, 533 F.3d at 650; *Callas*, 193 F.3d at 955-56.

In *Callas*, for example, the Eighth Circuit broadly construed "arising out of" in an exclusion that removed coverage for injuries "arising out of breach of contract." 193 F.3d at 955-56. In that case, the insured had been sued after it violated a contract to sell only products made by a certain manufacturer and misrepresented the origin of products

---

(Footnote Continued From Previous Page)

damages. In fact, Count 13 asserts entitlement to royalties, consequential damages, and punitive damages. (CMPB's Second Am. Counterclaims ¶¶ 201-02.)

to consumers. *Id.* at 954. The insured faced, among other things, claims of unfair competition and trademark infringement. *Id.* Noting Minnesota courts' broad interpretation of "arising out of," the Eighth Circuit concluded that all claims against the insured "flow[ed] from" or "ha[d] their origins in" the breach of contract. *Id.* at 956. Accordingly, *Callas* held that the breach-of-contract exclusion applied to all counts in the underlying complaint, and the insurer had no duty to defend. *Id.*

In light of *Callas* and its broad interpretation of "arising out of," the Court concludes that each Infringement Counterclaim arises out of a breach of contract. The basis for the Infringement Counterclaims is the allegation that FMMI engaged in unauthorized use of the "got milk?" marks. (CMPB's Second Am. Counterclaims ¶¶ 93-94.) FMMI's use was unauthorized because FMMI agreed to the First Amendment to the License Agreement, which terminated the License Agreement that previously permitted FMMI's use of the marks. (*Id.* ¶¶ 82, 93, 192.) Indeed, each of the Infringement Counterclaims incorporates the allegation that "FMMI continues to manufacture, distribute and/or sell flavored drinking straws that bear the 'got milk?' marks *in violation of the First Amendment to License Agreement's provision that FMMI cease all use of the 'got milk?' marks*." (*Id.* ¶ 93 (emphasis added).) In these circumstances, all of CMPB's Infringement Counterclaims "flow from or have their origins in" FMMI's breach of the First Amendment to the License Agreement. *See Callas*, 193 F.3d at 956. The breach-of-contract exclusion therefore applies to all of the Infringement Counterclaims.

Further, the Court concludes that each Contract Counterclaim arises out of a breach of contract. Each Contract Counterclaim alleges that FMMI, either in its own capacity or through one of its alter egos, breached the License Agreement, the First Amendment to the License Agreement, or the DCG License Agreement. (CMPB's Second Am. Counterclaims ¶¶ 179, 187, 192, 220.)[6] The breach-of-contract exclusion plainly excludes the Contract Counterclaims from coverage.

### C.   The Knowing-Violation Exclusion

In addition, the knowing-violation exclusion removes the Infringement Counterclaims and the Fraud Counterclaims from coverage.[7] The knowing-violation exclusion states that coverage does not extend to "'[p]ersonal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal advertising injury.'" Thus, for the knowing-violation exclusion to apply to one of CMPB's counterclaims, the counterclaim must allege that: (1) FMMI caused an injury; (2) FMMI knew that the conduct giving rise to the injury would violate another's rights; and (3) FMMI knew that the conduct

---

[6]   FMMI argues that CMPB's Contract Counterclaims arise out of an *implied* contract, and accordingly, that the breach-of-contract exclusion does not apply. This contention is meritless, as the Contract Counterclaims in no way allege the existence of an implied contract.

[7]   West Bend also claims that the knowing-violation exclusion precludes coverage for the Contract Counterclaims because, West Bend argues, Counts 10 and 11 are based on intentional acts—FMMI's filing of a lawsuit against CMPB and FMMI's refusal to permit an audit of its records. The Court disagrees, as neither Count 10 nor Count 11 alleges that FMMI knew that this conduct would breach its contract with CMPB.

giving rise to the injury would cause an injury.[8] Each of CMPB's counterclaims alleges that FMMI caused an injury suffered by CMPB. (*Id.* ¶¶ 124, 128, 132, 138, 142, 149-50, 161, 164, 170, 180, 188, 193, 196, 221.) The question is whether each counterclaim alleges that FMMI acted with the knowledge required by the exclusion.

At least two Eighth Circuit cases, applying Minnesota law, have considered knowledge- or intent-based exclusions in connection with claims that do not require knowledge or intent as elements. In *AMCO*, the Eighth Circuit held that a knowledge-of-falsity exclusion did not remove coverage where the underlying complaint alleged conduct that could have been negligent or intentional in support of a false advertising claim. 648 F.3d at 882-83. The policy in that case excluded coverage for certain injury related to false information published "by or at the direction of the insured *with knowledge of its falsity*." *Id.* at 877 (emphasis added). Among other conduct, the underlying complaint alleged that the insured failed to ensure accuracy of market data that it published. *Id.* at 878. Because a false advertising claim does not require intentional conduct, and because the complaint did not allege that the insured's failure to ensure data accuracy was intentional, the Eighth Circuit held that the knowledge-of-falsity exclusion did not apply. *Id.* at 881-83.

---

[8]     FMMI contends that the knowing-violation exclusion applies only if CMPB alleges that FMMI engaged in conduct with knowledge that its conduct would cause CMPB to lose sales and profits. This argument is unpersuasive. The exclusion requires only that CMPB allege that FMMI knew its conduct would cause *a* harm, not necessarily the specific harm that in fact resulted. *See Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 611 (Minn. 2001).

In *Sletten*, the Eighth Circuit held that an intentional-injury exclusion removed coverage where the underlying complaint alleged that the insured published false information for the purpose of injuring a competitor's reputation. 782 F.3d at 938. The policy contained an exclusion for injury that the insured "expected or intended," and the underlying complaint accused the insured of defamation. *Id.* at 934-35. Although the court determined that defamation may occur without intent to injure, each claim against the insured specifically alleged that the insured intended to injure his competitor. *Id.* at 936, 938. Accordingly, the Eighth Circuit concluded that the intentional-injury exclusion applied to each claim. *Id.* at 938.

With *AMCO* and *Sletten* in mind, the Court finds that the Infringement Counterclaims fall within the knowing-violation exclusion. Although the Infringement Counterclaims do not require knowledge or intent as elements, each alleges that FMMI knew that its use of the "got milk?" marks in its advertisements would violate CMPB's rights and cause injury. First, each Infringement Counterclaim incorporates the allegation that FMMI continued to use the "got milk?" marks even though FMMI agreed to stop using the "got milk?" marks in the First Amendment to the License Agreement. (CMPB's Second Am. Counterclaims ¶ 93.) This allegation implies that FMMI knew about CMPB's rights in the marks, knew that its use of the marks was unauthorized, and knew that its use of the marks would harm CMPB.

Second, each Infringement Counterclaim incorporates the allegation that FMMI removed expiration dates from FMMI products that bear the "got milk?" marks, and added false expiration dates, even though FMMI was "fully aware" that the expiration

dates had passed.  (*Id.* ¶ 94.)  This allegation claims that FMMI knowingly misrepresented the expiration dates on its "got milk?" products, which implies that FMMI knew that sale of such products was in violation of CMPB's rights.  Third, Counts 1, 2, 3, 4, and 6 include allegations that FMMI used the "got milk?" marks with intent to cause confusion, to deceive consumers, or to harm the reputation of the "got milk?" marks.  (*Id.* ¶¶ 123, 127, 131, 137, 151-52.)  These allegations imply that FMMI knew that its use of the marks would cause injury.  Because each Infringement Counterclaim alleges that FMMI knew that its conduct would violate CMPB's rights and cause harm, the knowing-violation exclusion applies to each of the Infringement Counterclaims.  *See Sletten*, 782 F.3d at 938.

In addition to excluding the Infringement Counterclaims from coverage, the Policies exclude the Fraud Counterclaims.  Fraud requires intent and knowledge as elements.  *E.g., Reisdorf v. i3, LLC*, --- F. Supp. 3d ----, Civ. No. 14-780, 2015 WL 5311502, at *21 (D. Minn. Sept. 11, 2015); *Cornejo v. Ocwen Loan Serv., LLC*, --- F. Supp. 3d ----, Civ. No. 15-993, 2015 WL 9268690, at *9 (E.D. Cal. Dec. 21, 2015).  Further, each Fraud Counterclaim alleges that FMMI (and its alter ego) made false statements to CMPB for the purpose of inducing CMPB to reduce the royalty payment owed to CMPB by FMMI, thereby depriving CMPB of payment to which it was entitled.  (CMPB's Second Am. Counterclaims ¶¶ 166, 196.)  Specifically, Count 9 alleges that FMMI's conduct constituted "an intentional misrepresentation made with the intention . . . of depriving CMPB of property or legal rights or otherwise causing injury."  (*Id.* ¶ 171.)  And, Count 13 alleges that FMMI made misrepresentations to CMPB "knowing

16

the representations to be false and with the intent to deceive." (*Id.* ¶ 197.) Clearly, the knowing-violation exclusion applies to each of the Fraud Counterclaims.

Therefore, because the Court finds that all of CMPB's counterclaims fall within one or both of the relevant exclusions, the Court concludes that West Bend has no duty to defend FMMI.

## IV. Duty to Indemnify

Next, the Court considers whether the Policies require West Bend to indemnify FMMI. Because the duty to defend is broader than the duty to indemnify, "if the court concludes there is no duty to defend, then there also is no duty to indemnify." *Selective*, 781 F.3d at 985. Here, West Bend has no duty to defend FMMI, so it also has no duty to indemnify FMMI.

## V. Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, and Declaratory Judgment

Finally, given the Court's conclusion that West Bend owes neither a duty to defend nor a duty to indemnify, the Court considers FMMI's three claims against West Bend. In Count 1, FMMI alleges that West Bend breached its insurance contracts with FMMI by failing to provide coverage for CMPB's counterclaims against FMMI. Because the Court concludes that West Bend has no duty to defend or indemnify, its failure to defend or indemnify does not constitute a breach of contract. As such, West Bend is entitled to summary judgment on Count 1.

In Count 2, FMMI alleges that West Bend breached an implied covenant of good faith and fair dealing by failing to provide coverage for CMPB's counterclaims against

FMMI.  Failing to provide coverage when CMPB's counterclaims were not covered by the Policies cannot constitute bad faith, and FMMI points to no evidence suggesting that other actions or omissions by West Bend amounted to a breach of the implied covenant. *See, e.g., N. States Power St. Paul Credit Union v. CUMIS Ins. Soc'y, Inc.*, Civ. Nos. 13-385, 13-387, 2013 WL 4052675, at *5 (D. Minn. Aug. 9, 2013); *Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Canada, Ltd.*, 552 N.W.2d 254, 268 (Minn. Ct. App. 1996).  West Bend is entitled to summary judgment on Count 2.

In Count 3, FMMI alleges that it is entitled to a declaratory judgment that West Bend has duties to defend and indemnify FMMI.  Because the Court holds that West Bend owes neither duty, West Bend is entitled to summary judgment on Count 3.

## CONCLUSION

Because each of CMPB's counterclaims against FMMI falls within the breach-of-contract exclusion, the knowing-violation exclusion, or both, the Court concludes that West Bend has no duty to defend or indemnify FMMI against CMPB's counterclaims.  As such, all of FMMI's claims fail.  The Court grants summary judgment to West Bend.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1.  Defendant West Bend Mutual Insurance Company's Motion for Summary Judgment (Doc. No. [16]) is **GRANTED**.

2.  Plaintiff Food Market Merchandising, Inc.'s Motion for Summary Judgment (Doc. No. [21]) is **DENIED**.

       3.      Plaintiff Food Market Merchandising, Inc.'s Complaint (Doc. No. [1-1]) is

**DISMISSED WITH PREJUDICE**.

      **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 28, 2016                                 s/Donovan W. Frank
                                                                            DONOVAN W. FRANK
                                                                            United States District Judge